99 Cal.Rptr.2d 887 (2000)
83 Cal.App.4th 639
ESTATE of John James McGUIGAN, Deceased.
Judith A. Desmond, Petitioner and Respondent,
v.
Kathleen Connell, as State Controller, etc., Claimant;
Linda Geitner, Movant and Appellant.
No. C030062.
Court of Appeal, Third District.
September 5, 2000.
As Modified on Denial of Rehearing October 3, 2000.
*888 Hinojosa, Khougaz & Wallet, Lynard C. Hinojosa and Trudi Baltz Sabel, Los Angeles, for Movant and Appellant.
No Appearance for Claimant.
Richard T. Tosaw, Ceres, for Petitioner and Respondent.
KOLKEY, J.
"Code of Civil Procedure section 1355 [1] allows a potential heir five years from the state's initial reception of an escheated estate to file a claim to recover the estate." (Estate of Cruz (1989) 215 Cal.App.3d 1416, 1418, 264 Cal.Rptr. 492.) Under section 1355, the potential heir makes a claim by filing a petition that includes a detailed family history of the decedent, or a statement of reasons why the petitioner is unable to do so.
In this case, the potential heir's section 1355 petition contained neither the required, detailed family history nor a statement explaining why she was unable to provide one. More significantly, although the potential heir was aware that the decedent had a son, her section 1355 petition did not mention that fact. Indeed, her counsel acknowledged that he and other "heir finders" have "ignored" many of the disclosure requirements under section 1355 for the past 15 years. Accordingly, appellant, Linda Geitnerthe administrator of the son's estatebrought a motion to vacate the ensuing judgment distributing the escheated estate on the grounds of mistake and extrinsic fraud. The trial court denied the motion.
We reverse. Although section 1355 permits more distant heirs who file timely petitions to recover escheated property, over closer but unknown relatives, nothing in the statute suggests that the Legislature intended to reward those heirs who deliberately fail to identify, in breach of section 1355, heirs more deserving of the unexpected windfall of an inheritance. Courts have little hesitated in other contexts to find extrinsic fraud where one heir has deliberately failed to disclose a more entitled heir. (See, e.g., State of California v. Broderson (1967) 247 Cal.App.2d 797, 56 Cal.Rptr. 58; Harkins v. Fielder (1957) 150 Cal.App.2d 528, 310 P.2d 423.) Under the circumstances here, concealment by one claimant of another more *889 deserving qualifies as extrinsic fraud. Accordingly, we conclude that a judgment, based on a section 1355 petition that deliberately fails to identify known and closer heirs, may be set aside for extrinsic fraud, as long as the circumstances suggest that compliance with section 1355 would have likely resulted in the closer heir's making a timely claim in the proceeding.

FACTUAL AND PROCEDURAL BACKGROUND
John James McGuigan (decedent) died intestate on June 13, 1990.
Years later, in February 1996, the Santa Clara Public Administrator filed its order that the estate, in the approximate amount of $160,000, escheat to the State of California (State) because the decedent had no known heirs.
In December 1996, respondent Judith Desmond (respondent), the daughter of the decedent's sister, filed a petition to claim the escheated property pursuant to section 1355 (hereinafter the petition or the section 1355 petition). The petition claimed the escheated estate on behalf of respondent and her brother, Donald Phelps. As required by section 1355, the notice of the hearing was served on the Attorney General and the State Controller. Neither contested the petition.[2]
On February 10, 1997, the Sacramento County Superior Court issued its Order Distributing Escheated Estate (judgment), distributing one-quarter of the escheated estate to respondent, one-quarter to respondent's brother, and one-half to the Bureau of Missing Heirs, Inc.[3]
Five months later, in July 1997, appellant, the administrator of the estate of Robert McGuigan (Robert), the deceased son of the decedent, filed a motion to vacate the judgment pursuant to section 473[4] and the trial court's inherent equity power. Appellant argued that the respondent's petition had omitted facts known to respondent, namely, that the decedent had been married and left a son, Robert (who had died on June 14, 1996, six years after the decedent's death). A declaration from Robert's wife asserted that she and Robert had met the decedent's sister and her daughterthe respondentas well as the respondent's brother in 1963 in New York. Nonetheless, appellant noted that she, as the administrator of Robert's estate, did not receive notice of the section 1355 proceedings, and argued that the judgment thereon had been obtained by extrinsic fraud.
In opposition, respondent acknowledged that she had met the decedent's son and had so advised her counsel's office, but could not recall the son's name or address. Respondent's counsel candidly represented that "[f]or the last 15 years in [his] heir[-]finding business, we have pleaded only what was relevant and have ignored many of the [section] 1355 questions and the same goes for other heir[-]finders. Until now, neither the Controller, the Attorney General [n]or the Courts, have raised the issue of compliance." The trial court issued a tentative ruling granting the motion to vacate the judgment.
However, respondent requested further argument, asserting, inter alia, that a recently decided case, Parage v. Couedel (1997) 60 Cal.App.4th 1037, 70 Cal.Rptr.2d 671 (Parage), was controlling. Following such argument, the trial court denied appellant's motion to vacate the judgment, presumably on the basis of Parage.
We shall reverse.

*890 DISCUSSION

I
"[T]he courts have long held that escheats are not favored by the law" and are to be avoided wherever possible. (Mannheim v. Superior Court (1970) 3 Cal.3d 678, 691, 91 Cal.Rptr. 585, 478 P.2d 17 (Mannheim).) As a result, Probate Code section 11903 requires that "[p]roperty distributed to the state [is to] be held by the Treasurer for a period of five years from the date of the order for distribution, within which time any person may claim the property." (Prob.Code, § 11903.)[5] Thus, "title to property distributed to the state ... does not vest absolutely and unconditionally in the state, nor is the escheat complete, until the lapse of the five-year period without the appearance of claimants; theretofore the title held by the state is conditional and subject to divestment by the appearance of legitimate claimants." (Mannheim, supra, 3 Cal.3d at pp. 689-690, 91 Cal.Rptr. 585, 478 P.2d 17, quoting Estate of Lindquist (1944) 25 Cal.2d 697, 711, 154 P.2d 879, concerning former Prob.Code, § 1027; see Prob. Code, §§ 11900, 11903.)
However, with exceptions not relevant here, such escheated property, "if not claimed within five years from the date of the order for distribution ... is permanently escheated to the state without further proceeding." (§ 1441; see Ross, et al., Cal. Practice Guide: Probate (The Rutter Group 1998) ¶ 16:489, p. 16-125 (hereinafter cited as Rutter).) As explained by our state Supreme Court in Mannheim, supra, "the special five-year period is merely a last-ditch legislative effort to protect [previously unknown] heirs from a permanent escheat." (Mannheim, supra, 3 Cal.3d at p. 692, 91 Cal.Rptr. 585, 478 P.2d 17; see Estate of Williams (1940) 37 Cal.App.2d 181, 186, 99 P.2d 349.)
Section 1355 sets forth the requirements for a petition to claim escheated property within the five-year period[6] and for the ensuing hearing thereon. The petition must include a detailed family history of the decedent, including the names, dates of birth, and addresses of all heirs, or a statement explaining "why the petitioner is unable to set forth any of the matters or things hereinbefore required." (§ 1355, at 3d-15th pars.)[7] The petition is to be verified. *891 A copy of the petition and a notice of the hearing thereon must be served on the Attorney General and Controller. The trial court is to "try the issue as issues are tried in civil actions; and if it is determined that [the petitioner] is entitled to the money or other property or the proceeds thereof, it must order the property ... to be delivered to him...." (§ 1355, at 18th par.; see fn. 7, ante.)
Under section 1355, the right to escheated property "belongs only to heirs who file timely section 1355 petitions, whatever their degree of kinship to the decedent. [Citation.] If a `prior heir' who could file a timely claim fails to do so, the express terms of section 1355 bar him or her absolutely from making a claim to the estate thereafter...." (Estate of Supeck, supra, 225 Cal.App.3d at p. 369, 274 Cal.Rptr. 706, citing Mundt v. State of California (1976) 54 Cal.App.3d 940, 943, 127 Cal. Rptr. 20; see Rutter, supra, ¶ 16:489a, p. 16-125.)
Moreover, "when statutory escheat procedures are followed" (Parage, supra, 60 Cal.App.4th at p. 1042, 70 Cal.Rptr.2d 671) and the court determines that the petitioners are heirs of the decedent, they are entitled to immediate distribution of the escheated estate, regardless of whether there might be other unknown heirs *892 closer in line to the decedent, who will be forever divested of their interest in the estate. (Id. at p. 1043, 70 Cal.Rptr.2d 671; Estate of Cruz, supra, 215 Cal.App.3d at pp. 1418-1419, 264 Cal.Rptr. 492; see Mannheim, supra, 3 Cal.3d at pp. 691-693, 91 Cal.Rptr. 585, 478 P.2d 17.)
Obviously, this "first come, first serve" policy can lead to seemingly harsh results. However, as this court explained in Estate of Cruz, supra: "Delaying distribution of the estate is not required because unknown heirs do not have a vested interest in an escheated estate during the state's five-year waiting period.... Normally heirs have a reasonable period during the estate administration in which to present claims. Claimants who come forward after distribution to the known heirs cannot challenge the distribution once it is final. [Citation.] [¶] The five-year period delaying the final escheat to the state does not vest an absolute right in all heirs to state claims during that time. That delay is merely a final attempt to prevent the escheat.... Where there is a mechanism to distribute the estate and prevent the escheat there is no reason to provide the extra five-year period. [Citation.] Heirs who lose the opportunity to present claims during the five-year period because another heir claims the estate first therefore suffer no disadvantage greater than that endured by any heir who fails to come forward during the normal estate administration. [Citation.] Thus, immediate distribution is proper when the court finds an heir is entitled to an escheated estate during the five-year period." (215 Cal.App.3d at pp. 1418-1419, 264 Cal.Rptr. 492.)
In some ways, the prospect that the escheated estate will be immediately distributed to the first heirs who petition, combined with the limited notice of a section 1355 proceeding, makes compliance with the statute's disclosure requirements all the more important. The information in the section 1355 petition, which is served on the Attorney General and the Controller and made part of the public record, can encourage a final effort, whether by the State or heir-finders, to notify the most deserving heir of the escheated estate. While the statutory scheme under section 1355 does not require notice to the most deserving heir (notice already having been provided during the estate administration), neither does it discourage an effort to give such notice when a more deserving heir is brought to the court's attention. There would, after all, appear to be no other purpose for the statutory requirement that the petitioner specify the names and addresses "of each of the heirs of the decedent" in the petition. (§ 1355, at 14th par.; see fn. 7, ante.) And since the court is to order delivery of the escheated property only once it has "determined that [the petitioner] is entitled to the money or other property or the proceeds thereof (§ 1355, at 18th par.; see fn. 7, ante ), judicial inquiry concerning the existence of a more deserving heir fully comports with the statutory language and purpose. Full disclosure of the decedent's heirs, as required by law, is the final safeguard that the State's return of the escheated property will go to those most entitled to it.

II
In this case, respondent, a niece of the decedent, filed a section 1355 petition to claim the escheated estate on behalf of herself and her brother. A judgment was entered in their favor.
Despite respondent's subsequent admission that she had failed to disclose in her petition a known (and closer) heir, the trial court denied appellant's motion to vacate, relying presumably on Parage, supra.
In Parage, supra, a first cousin (the movant) of the decedent, moved pursuant to section 473 to vacate a judgment entered in favor of a third cousin (petitioner), who had successfully filed a section 1355 petition to recover escheated property. The movant, who was a French citizen, argued that she was entitled to relief because she had not received actual notice of the section 1355 proceedings. (60 Cal. App.4th at pp. 1040-1041, 70 Cal.Rptr.2d 671.)
The Parage court rejected the claim because the movant was "entitled solely to statutory constructive notice." (60 Cal. *893 App.4th at p. 1043, 70 Cal.Rptr.2d 671.) And the movant had received such notice pursuant to the Probate Code, which authorizes a public administrator (as here) to initiate probate proceedings by petitioning for appointment as the personal representative of the estate, with notice to unknown heirs being made by publication. (60 Cal. App.4th at p. 1043, 70 Cal.Rptr.2d 671.) The Parage court noted that section 1355 "requires only that petitioners serve their petitions on the Attorney General[8], and in cases involving real estate, record notices in the relevant county." (Ibid.) Thus, the court reasoned, the movant's mere failure to receive actual notice of the section 1355 proceeding did not constitute "mistake, inadvertence, surprise, or excusable neglect" within the meaning of section 473. (Ibid.) Moreover, the court held that the failure to receive actual notice did not constitute extrinsic fraud. (60 Cal. App.4th at p. 1044, 70 Cal.Rptr.2d 671.)
Respondent argues that the instant case is on "all fours" with Parage. The cases are indeed similar. Here, as in Parage, an heir closer in line to the decedent has been seemingly foreclosed from claiming the escheated estate because the more distant heir filed an earlier section 1355 petition and obtained judgment. (See Parage, supra, 60 Cal.App.4th at pp. 1040-1041, 70 Cal.Rptr.2d 671.) Likewise, as in Parage, the foreclosed heir did not learn of the section 1355 proceedings until after the judgment had been entered. (Id. at p. 1042, 70 Cal.Rptr.2d 671.)
However, the instant case differs from Parage in one importantand dispositiverespect. In Parage, there was no suggestion that the section 1355 petition failed to satisfy the statutory requirements: "[W]hen statutory escheat procedures are followed `[u]nknown heirs who fail to come forward ... cannot later complain of the distribution to other known heirs after [the judgment] has become final....'" (Parage, supra, 60 Cal.App.4th at p. 1042, 70 Cal.Rptr.2d 671, quoting Mannheim, supra, 3 Cal.3d at p. 692, 91 Cal.Rptr. 585, 478 P.2d 17; italics added.)
In contrast, here, respondent's section 1355 petition was deficient. Respondent failed to set forth the detailed family history required, or state under penalty of perjury why she was unable to do so. (§ 1355, at 3d-15th pars.; see fn. 7, ante.)
More significantly, respondent acknowledged that she was aware of the decedent's son (although not his current location), but nonetheless failed to identify him in her petition. Her counsel honestly admitted that "[f]or the last 15 years in this heir[-]finding business, we have pleaded only what was relevant and have ignored many of the 1355 questions and the same goes for other heir[-]finders."[9]
The deliberate failure to specify a known and closer heir, in violation of section 1355, constitutes extrinsic fraud sufficient to vacate the judgment under the circumstances of this case. (See, e.g., Estate of Sanders (1985) 40 Cal.3d 607, 614, 221 Cal.Rptr. 432, 710 P.2d 232; State of California v. Broderson, supra, 247 Cal.App.2d 797, 56 Cal.Rptr. 58; Harkins v. Fielder, supra, 150 Cal.App.2d 528, 310 P.2d 423; see generally 8 Witkin, Cal. Procedure (4th ed. 1997) Attack on Judgment in Trial Court, §§ 223, 226, at pp. 727-728, 730-731.)
"`Extrinsic fraud is a broad concept that "tend[s] to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing."'" (Estate of Sanders, supra, 40 Cal.3d at p. 614, 221 Cal.Rptr. 432, 710 P.2d 232, quoting In re Marriage of Modnick (1983) 33 Cal.3d 897, 905, 191 Cal. Rptr. 629, 663 P.2d 187.)
"Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence, fraudulently prevented from fully participating in the proceeding. [Citation.] Examples of extrinsic fraud are: concealment of the existence of a community property asset, failure *894 to give notice of the action to the other party, and convincing the other party not to obtain counsel because the matter will not proceed (and then it does proceed). [Citation.] The essence of extrinsic fraud is one party's preventing the other from having his day in court." (City and County of San Francisco v. Cartagena (1995) 35 Cal.App.4th 1061,1067, 41 Cal.Rptr.2d 797; accord, Estate of Sanders, supra, 40 Cal.3d at p. 614, 221 Cal.Rptr. 432, 710 P.2d 232.)
We acknowledge that section 1355 does not obligate the petitioner (the respondent here) to give actual or constructive notice of the hearing to potential heirs. Thus, we must address whether a petitioner who deliberately fails to disclose a known and closer heir, in violation of section 1355, deprives that heir of the opportunity to present a claim, or have his or her claim considered, in the proceeding.
State of California v. Broderson, supra, 247 Cal.App.2d 797, 56 Cal.Rptr. 58, is instructive. There, the Court of Appeal affirmed a judgment to set aside a probate decree based on extrinsic fraud, even though all the notice requirements had been satisfied. In that case, after the surviving spouse died intestate without any known heirs, Gordon Cox, who was in the "probate research" business, contacted the appellant heirs and caused a petition to be filed on their behalf, claiming that they were entitled to the entire estate. Cox and the appellants knew, however, that this was not the case since the State had an interest in the estate. Notice of the hearing for their petition was given by posting and mailing to the public administrator. The probate court entered a decree ordering distribution of the estate to the appellants. The State subsequently brought suit to overturn the decree and obtain its interest. The trial court set aside its earlier decree so as to grant the state its one-half interest. The Court of Appeal affirmed the judgment setting aside the earlier decree on the basis of extrinsic fraudnotwithstanding the fact that appellants had given the notice required by lawbecause "the whole truth, so far as known to petitioners, [was] not set forth in the petition to determine heirship." (Id. at p. 804, 56 Cal.Rptr. 58.) The appellate court explained:
"Extrinsic fraud is present where, as here, a decree is procured from the probate court by conduct which prevents those having an interest in the estate from appearing and asserting their rights. [Citations.] [¶] ... It is true appellants gave the notice prescribed by the code section. But the trial court has found in effect, that at the time the petition was filed and the notice given, appellants knew they were not entitled to the whole of [the] estate, and that ... half would in the absence of heirs entitled to take, escheat to the State. Thus, finality of the decree is not protected by the notice given, because of the presence of extrinsic fraud. [Citation.] The outstanding characteristic of extrinsic fraud is that it prevents a fair adversary hearing, the party aggrieved being kept in ignorance of the proceedings. [Citation.] Appellants were under a duty to reveal to the probate court the extent of their knowledge, so that it might enter a proper decree. Failure to reveal that knowledge has prevented the State from asserting its claim, and precludes appellants' reliance upon the finality of the decree. [Citation.]" (247 Cal.App.2d at pp. 804-805, 56 Cal.Rptr. 58.)
Likewise, here, respondent was under a duty to reveal to the court all known heirs by virtue of section 1355. Notwithstanding the fact that respondent gave the notice required by law, respondent's suppression of the existence of a closer heir in her section 1355 petition misled the trial court and prevented it from entering a more appropriate decree, as in Broderson. The fact that notice was served in compliance with the law does not excuse the deficiency of that which was served. One heir's concealment of another more deserving qualifies as extrinsic fraud here.
Other cases in other contexts also suggest that the deliberate failure to notify the court of the existence of heirs, combined with the filing of a knowingly false petition, can constitute extrinsic fraud. (E.g., Harkins v. Fielder, supra, 150 Cal. App.2d at pp. 535, 537, 310 P.2d 423; Hewett v. Linstead (1942) 49 Cal.App.2d 607, 613-617, 122 P.2d 352.) "It is true that in *895 most cases of extrinsic fraud the defendant has said something directly to the person whose rights were involved amounting to representations that it was not necessary for such person to take any part in the proceedings.... But the rule allowing the maintenance of an action in equity for extrinsic fraud should not be limited so strictly as to require as a basis evidence of representations made directly to the one defrauded." (Purinton v. Dyson (1937) 8 Cal.2d 322, 326, 65 P.2d 777.) Thus, in this case, respondent need not have directly misled appellant. It is sufficient that respondent's suppression of the existence of a closer heir, in breach of her duty of disclosure under section 1355, misled the court and prevented any possibility of a fair adversary hearing over the right to the escheated estate.
Respondent defended her actions in the trial court on the grounds that section 1355 is "archaic," and that the family history information required to be included in a section 1355 petition is "irrelevant."
Respondent is free to label section 1355 however she pleases. What she may not do, however, is ignore the plain language of the statute. Section 1355 requires that a detailed family history be provided in the petition, including the "street address of each of the heirs of the decedent." If a petitioner knows of other heirs, but does not know where they live, petitioner need only so state in the petition. (§ 1355, at 15th par.; see fn. 7 ante.) To allow respondent, however, to decide that known heirs need not be listed, because she does not have their address, is to allow respondent to rewrite the statute. Only the Legislature has that power.
Unfortunately, there is a strong economic incentive to limit the information in the section 1355 petition so as to enhance the prospect that the present petitioner will be the one to receive the escheated estate. Only enforcement of the disclosure requirements in section 1355 can combat this. Unless the courts enforce the statute's disclosure provisions, the already limited notice of the section 1355 hearing will turn a race to the courthouse into a rout of the unsuspecting heirs.

III
Even if respondent's deliberate failure to specify a known and closer heir constituted extrinsic fraud in the sense that it misled the trial court and prevented any possibility of a fair adversary hearing over appellant's right to the escheated estate, we must determine whether the failure to identify the decedent's son in this case was harmless error, in light of the fact that heirs named in a section 1355 petition are not entitled to notice of the proceeding. After all, the particular defect here was, in essence, one of pleadinga failure to comply with section 1355's requirements for a petition. And under article VI, section 13 of the California Constitution, "No judgment shall be set aside ... in any cause ... for any error as to any matter of pleading ... unless, after an examination of the entire cause, ... the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." Under the applicable case law, "[w]hen the error is one of state law only, it generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached." (Soule v. General Motors Corp. (1994) 8 Cal.4th 548, 574, 34 Cal.Rptr.2d 607, 882 P.2d 298; accord, People v. Watson (1956) 46 Cal.2d 818, 836, 299 P.2d 243.)
This constitutional principle dovetails nicely with the rule for extrinsic fraud, which also requires prejudicial error: "A valid judgment will not be set aside merely because it was obtained by extrinsic fraud or mistake, in order to give the barren right to an adversary hearing. The plaintiff must plead and prove that he has a meritorious case, i.e., a good claim or defense that, if asserted in a new trial, would be likely to result in a judgment favorable to him." (8 Witkin, Cal. Procedure, supra, Attack on Judgment in Trial *896 Court, § 237, at p. 751; accord, Huron College v. Yetter (1947) 78 Cal.App.2d 145, 150, 177 P.2d 367.)[10]
In this case, the appellant has demonstrated that she has a good claim, which, if asserted in the section 1355 proceeding, would have resulted in a favorable judgment: As the administrator of the estate of the decedent's son, the appellant had a right to the escheated estate.[11] However, this case differs from the vast majority of extrinsic fraud cases, where the same circumstances that constitute the extrinsic fraud also demonstrate that in its absence, the aggrieved party would have timely made its claim or defense. In the unique context of section 1355, our harmless error analysis must address whether it was reasonably probable that appellant would have timely presented a claim in this proceeding but for respondent's extrinsic fraudthe deliberate failure to identify the decedent's son in her section 1355 petition. We conclude that it was reasonably probable for several reasons:
First, the section 1355 petition must be served on the Attorney General and the Controller. Disclosure that the decedent had a more deserving heir than respondent would have likely elicited an assertion of his rights by one of the State parties or the court. Indeed, the Controller suggested to the trial court in this case that she would not have issued a no contest letter to respondent's section 1355 petition had she been aware that the decedent had a closer relative.[12]
Second, not only might identification of a more deserving heir have elicited inquiry from the court about efforts to contact that heir, but the petition is a public document, open to inspection to anyone interested. The identification of a closer heir and a sizable estate would have probably attracted considerable notice by heir-finders. We need not overlook the fact that two heir-finding firms, representing appellant and respondent, are participating in this case. And at least one of the heir-finders acknowledged at oral argument that he reviews relevant court documents, such as section 1355 petitions.
*897 Third, notwithstanding the petition's suppression of the son's existence, appellant nonetheless learned of this proceedingand indeed, learned of it within five months of the judgment. Disclosure of the son in the section 1355 petition would have necessarily alerted appellant earlier. The timing of appellant's appearance in this matter, combined with the motivation of heir-finders to contact a known and closer heir disclosed in a section 1355 petition, combined with the prospect that the son's disclosure would have elicited inquiry from the State parties or the court, persuades us that it was reasonably probable that appellant would have made a timely claim in the section 1355 proceedings, absent respondent's suppression of the existence of the decedent's son.
One remaining contention needs to be addressed. Respondent argued in the trial court: "If the court grant[s] the motion to set aside the present [judgment] and enter a new one in favor of a closer heir, then what would prevent yet an even closer heir from claiming the estate, asking that the last order be set aside? ... This [result] [w]ould become ludicrous with court decrees always subject to attack." To the contrary, what prevents "an even closer heir from claiming the estate" after judgment is entered is the simple filing of a petition that meets the requirements of section 1355. (Parage, supra, 60 Cal. App.4th at pp. 1043-1044, 70 Cal.Rptr.2d 671.)

DISPOSITION
The judgment (order) is reversed and the matter remanded to the trial court with directions to vacate its order denying the motion to set aside the judgment and to enter a new order granting the motion. Appellant is awarded her costs on appeal. (Cal. Rules of Court, rule 26(a).)[13]
BLEASE, Acting P.J., and CALLAHAN, J., concur.
NOTES
[1] Unless designated otherwise, all further statutory references are to the Code of Civil Procedure.
[2] Section 1355 requires that the petition be served on both the Attorney General and the Controller. This court cannot find the proof of service for the petition in the appendix submitted by appellant (Cal. Rules of Court, rule 5.1), but both the Attorney General and Controller did receive notice of the hearing, and neither claimed that they were not served with the petition itself.
[3] Respondent's counsel is the owner of the Bureau of Missing Heirs, Inc., which is a private, heir-finding organization, which charges a negotiable fee for its services.
[4] Section 473 provides in relevant part:

"(b) The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."
[5] Probate Code section 11903 provides in full:

"(a) Property distributed to the state shall be held by the Treasurer for a period of five years from the date of the order for distribution, within which time any person may claim the property in the manner provided by Title 10 (commencing with Section 1300) of Part 3 of the Code of Civil Procedure.
"(b) A person who does not claim the property within the time prescribed in this section is forever barred, and the property vests absolutely in the state, subject to the provisions of Title 10 (commencing with Section 1300) of Part 3 of the Code of Civil Procedure."
[6] "[A]lthough section 1355 refers on its face only to a five-year statute of limitations dating from entry of judgment in an escheat proceeding initiated by the Attorney General pursuant to section 1410 et seq., section 1441 expressly makes the five-year statute of limitations dating from the order of final distribution in probate applicable to section 1355 proceedings." (Estate of Supeck (1990) 225 Cal.App.3d 360, 366, 274 Cal.Rptr. 706.)
[7] Section 1355 provides:

"[1] Within five years after date of entry of judgment in any proceeding had under the provisions of Chapter 5, or within five years after completion of notice by publication in an escheat action taken under the provisions of Section 1415, a person not a party or privy to such proceeding or action, if not otherwise barred, may file a petition in the Superior Court of the County of Sacramento, or as provided in Section 401, showing his claim or right to the money or other property, or the proceeds thereof.
"[2] Said petition shall be verified; and, in a proceeding for the recovery by the petitioner as heir, devisee, or legatee, or the successor in interest of an heir, devisee, or legatee, of money or other property received by the State from the estate of a decedent under the provisions of Article 1 of Chapter 6, such petition, among other things must state:
"[3] The full name, and the place and date of birth of the decedent whose estate, or any part thereof, is claimed.
"[4] The full name of such decedent's father and the maiden name of his mother, the places and dates of their respective births, the place and date of their marriage, the full names of all children the issue of such marriage, with the date of birth of each, and the place and date of death of all children of such marriage who have died unmarried and without issue.
"[5] Whether or not such decedent was ever married, and if so, where, when and to whom. "[6] How, when and where such marriage, if any, was dissolved.
"[7] Whether or not said decedent was ever remarried, and, if so, where, when and to whom.
"[8] The full names, and the dates and places of birth of all lineal descendants, if any, of said decedent; the dates and places of death of any thereof who died prior to the filing of such petition; and the places of residence of all who are then surviving, with the degree of relationship of each of such survivors to said decedent.
"[9] Whether any of the brothers or sisters of such decedent ever married, and, if so, where, when and whom.
"[10] The full names, and the places and dates of birth of all children who are the issue of the marriage of any such brother or sister of the decedent, and the date and place of death of all deceased nephews and nieces of said decedent.
"[11] Whether or not said decedent, if of foreign birth, ever became a naturalized citizen of the United States and, if so, when, where, and by what court citizenship was conferred.
"[12] The post-office names of the cities, towns or other places, each in its appropriate connection, wherein are preserved the records of the births, marriages and deaths hereinbefore enumerated, and, if known, the title of the public official or other person having custody of such records.
"[13] The nationality of each of the heirs of the decedent.
"[14] The street address of each of the heirs of the decedent.
"[15] If, for any reason, the petitioner is unable to set forth any of the matters or things hereinbefore required, he shall clearly state such reason in his petition.
"[16] At least 20 days before the hearing of the petition, a copy of the petition and notice of hearing must be served on the Attorney General and on the Controller, and the Attorney General may answer the same at his discretion.
"[17] If such claim includes a claim to real property or any interest therein, the petitioner shall record in the office of the county recorder of the county in which the real property is situated, a notice of the pendency of the petition containing the object of the action and a description of the property in the county affected thereby. From the time of filing such notice for record only, shall a purchaser or encumbrancer of the property be deemed to have constructive notice of the pendency of the action, and only of its pendency against parties designated by their real names.
"[18] The court must thereupon try the issue as issues are tried in civil actions; and if it is determined that such person is entitled to the money or other property or the proceeds thereof, it must order the property, if it has not been sold, to be delivered to him, or if it has been sold and the proceeds thereof paid into the State Treasury, it must order the Controller to draw his warrant on the Treasurer for the payment of the same, but without interest or cost to the State. A copy of such order, under the seal of the court, shall be a sufficient voucher for drawing such warrant.
"[19] All persons who fail to appear and file their petitions within the time limited are forever barred; saving, however, to infants and persons of unsound mind, the right to appear and file their petitions at any time within the time limited, or within one year after their respective disabilities cease." (Italics and numbers added.)
[8] The petition must also be served on the State Controller. (§ 1355, at 16th par.; see fn. 7, ante.)
[9] Counsel announced at oral argument that he now complies with the requirements of section 1355.
[10] Where the circumstances of the extrinsic fraud constitute a violation of due process, reversal may, however, be automatic. (See Peralta v. Heights Medical Center, Inc. (1988) 485 U.S. 80, 86-87, 108 S.Ct. 896, 899-900, 99 L.Ed.2d 75, 82.) We need not reach this issue here because we have determined that respondent's error was not harmless.
[11] In a petition for rehearing, respondent contends, for the first time and without any citation to authority, that the appellant had no right to the escheated estate "since the closer heir, the son, was already dead." However, the son died only after the decedent died in 1990; thus, by virtue of Probate Code section 7000, "title to [the] decedent's property pass[ed] on the decedent's death ... to the decedent's heirs as prescribed in the laws governing intestate succession." (Prob.Code, § 7000.) And such heirs are entitled to their share of the decedent's estate even if they die prior to distribution of the estate (Prob.Code, § 11801, subd. (a)), in which case "distribution [is] made to the personal representative of the estate of the beneficiary...." (Prob. Code, § 11802, subd. (a).) In this case, the son did not die until after the decedent's estate escheated to the State, and thus, he had a right under section 1355 to file a claim for the escheated estate. The appellant, as the administrator of the son's estate "stands in the shoes of, and for the purposes of ... litigation possesses the same but no greater rights, than the intestate." (Anderson v. Nelson (1927) 83 Cal.App. 1, 5, 256 P. 294.) Therefore, the appellant, as the administrator of the son's estate, was entitled to assert the son's claim to the decedent's estate pursuant to section 1355, to the same extent that the son could have. Respondent argues that the right to file a section 1355 petition "belongs only to an heir," not to the administrator, but the statutory language of section 1355 is to the contrary: It allows recovery "by the petitioner as heir, devisee, or legatee, or the successor in interest of an heir, devisee, or legatee." (§ 1355, at 2d par.; emphasis added.) Accordingly, there is no merit to respondent's new arguments.
[12] The Controller filed with the trial court a response to appellant's motion to vacate, which indicated that she was unaware the decedent had a "closer relative," i.e., a son. She confirmed that "the Controller [would] refrain from issuing `no contest' letters in the future unless the proof submitted appears to be sufficient AND the pleading requirements of section 1355 are satisfied." (Emphasis in original.)
[13] As a result of our decision, we need not address the other grounds raised by appellant for review, including whether section 473 could also serve as a basis for setting aside the order.