Filed 6/17/14  Estate of Dickson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| Estate of ALVIN C. DICKSON, JR., Deceased. | C074221 |
| REGINALD BRYAN WATKINS,<br><br>Petitioner and Appellant,<br><br>v.<br><br>KENT R. ORR et al.,<br><br>Defendants and Respondents. | (Super. Ct. No. 34-2012-00129243-PR-OP-FRC) |

In this case arising from the estate of decedent Alvin C. Dickson, Jr., appellant Reginald Bryan Watkins appeals from an order declining to vacate a judgment previously entered in favor of respondents Kent R. Orr, et al. (Orr), heirs of Dickson who managed to reverse the escheat of Dickson's estate to the State of California and have the estate transferred to them.  We shall affirm the trial court's order denying the motion to vacate.

1

## BACKGROUND

On September 10, 2012, Orr sued the State Controller to recover escheated property. (See Code Civ. Proc., § 1355.)[1] He alleged Dickson died intestate on September 4, 2009, and that the San Bernardino County Superior Court had entered an order of final distribution on February 14, 2012, declaring the estate escheated. Orr alleged he was Dickson's heir under the intestacy laws, being Dickson's second cousin once removed, and had learned of the San Bernardino case via an heir tracing company. On October 18, 2012, the Sacramento Superior Court filed a judgment granting Orr's petition.

On December 20, 2012, Watkins filed what was captioned as a petition to modify the Sacramento County judgment, alleging he was a "paternal first cousin" of Dickson. He alleged that, through another heir tracing service, he notified the State Controller of *his* status as Dickson's heir on September 10, 2012, but did not hear back until October 22, 2012, when the State Controller advised him of the Sacramento County judgment. Watkins argued that the State Controller was on notice of his claim and had a duty to notify him of the Sacramento action, and the failure to do so justified relief, in the form of vacating the judgment in favor of Orr, and entering a judgment in Watkins's favor. He also alleged that the State Controller improperly released the funds to Orr. Watkins listed 17 first cousins he alleged collectively were entitled to Dickson's estate in preference to Orr's claims.

Orr opposed the motion, arguing the State Controller had a duty to distribute the funds pursuant to the Sacramento County judgment, regardless of allegedly closer-in-blood heirs, and alleging fatal defects in Watkins's papers, including his failure to

_____

[1] Further undesignated statutory references are to the Code of Civil Procedure.

2

provide a section 1355 petition.[2]  The State Controller, too, opposed the motion, in part echoing Orr's opposition, and due to statutory immunity.

Watkins's reply emphasized a theory of extrinsic fraud by the State Controller, and argued his petition complied with section 1355.  For the first time, he pointed to an October 15, 2012, e-mail by a State Controller employee to him, stating in part:  "No activity on this Estate except inquiries.  A court order will be required for payment to be made, funds are available until 4/2017."  This was in reply to an e-mail asking:  "Dear Penny [Gillman],  [¶]  When you have a moment would you please let me know if there has been any claims on this estate?"  Watkins characterized the e-mail reply as "an affirmative false statement by the State Controller."

At a hearing on January 31, 2013, the trial court denied the petition to modify.

On March 1, 2013, Watkins filed a petition captioned as a motion to vacate that same judgment (filed on October 18, 2012).  He replicated some arguments contained in his prior motion, in pertinent part claiming extrinsic fraud by the State Controller.

Orr and the State Controller separately opposed the motion to vacate.  Watkins's reply again alleged he was misled by the e-mail.

In partial opposition to the motion, the State Controller's chief counsel filed a declaration stating in part:  "The only thing [Ms. Gillman] noted was that there were on-line inquires and she indicated as much.  Court proceedings are not entered into the system and are not otherwise reflected in the system until a court order issued."  Mr. Chivaro had been employed by the State Controller for 32 years, and has been its chief counsel for 23 years, thereby showing the basis of his knowledge.

After a hearing on May 5, 2013, the trial court denied the motion in part as follows:  "Mr. Watkins has not identified any legal grounds to invalidate the judgment.

_____

[2]  We explain the section 1355 procedure *post*.

The State Controller had no legal duty to give notice to Mr. Watkins, his counsel or any heir hunter service of the petition filed by Kent Orr. In addition the State Controller is immune from suit once a claim is paid. [Citation.] Finally, Mr. Watkins cannot establish that the judgment was the result of extrinsic fraud because there was no confidential or fiduciary relationship between the Controller and Mr. Watkins."

Watkins timely appealed. The appeal lies. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 200, pp. 275-277.) After Watkins filed his opening brief, the appeal was dismissed by stipulation as to the State Controller. Watkins's reply brief does not acknowledge this dismissal, but reiterates arguments previously made.

## DISCUSSION

Watkins contends the trial court erred in denying his motion to vacate, arguing excusable mistake or extrinsic fraud, caused by the State Controller's e-mail, which induced Watkins "to not appear in court."

I

*The Law Regarding Escheated Estates*

The section 1355 procedure has been summarized as follows:

> "Probate and escheat proceedings are in rem, that is, seek to affect the interests of all persons in certain property. [Citations.] In such proceedings, constructive notice authorized by statute satisfies the requirements of due process. [Citation.]

> "Thus, with regard to probate proceedings, '[b]y giving the notice prescribed by the statute, the entire world is called before the court, and the court acquires jurisdiction over all persons for the purpose of determining their rights to any portion of the estate . . . .' [Citation.] In probate proceedings, ' . . . one who lives in another state, or in a foreign country, and never in fact received any notice, is still bound if the statutory notice was given. [Citations.]' [Citation.] Furthermore, in *Mannheim v. Superior Court* [(1970) 3 Cal. 3d 678,] 692, our Supreme Court applied these principles to escheat proceedings, stating that when statutory escheat procedures are followed, '[u]nknown heirs who fail to come forward . . . cannot later complain of the distribution to other known heirs after it has become final . . . . [Citations.]' [Citation.]

4

"In the present case, the pertinent statutes authorize constructive notice to unknown heirs.  The Probate Code permits a public administrator to take control of a decedent's estate subject to loss, injury, waste, or misappropriation [citation], and to initiate probate proceedings by petitioning for appointment as personal representative of the estate [citation].  Notice of the petition to unknown heirs is made by publication.  [Citations.]

"[Statutes authorize] the Attorney General to commence a proceeding to obtain a judgment that the state is entitled to unclaimed property by reason of an escheat.  Following the filing of a petition by the Attorney General, the trial court must publish in a pertinent newspaper an order requiring interested persons to appear in the action, and file a copy of the order with the papers applicable to the estate. [Citation.]  After publishing the order, the trial court acquires jurisdiction over the property and the rights of all claimants.  [Citation.]

"[S]ection 1355 'allows a potential heir five years from the state's initial reception of an escheated estate to file a claim to recover the estate.'  [Citation.]  With respect to notice, section 1355 requires only that petitioners serve their petitions on the Attorney General, and in cases involving real estate, record notices in the relevant county.  [Citation.]  Once the trial court determines that petitioners are heirs, they are entitled to immediate distribution of the escheated estate to free the state from the burden of managing the estate." (*Parage v. Couedel* (1997) 60 Cal.App.4th 1037*,* 1042-1043 (*Parage*).)

II

*Analysis*

It was Watkins's burden, as the claimant, to show entitlement to relief in his motion to vacate the judgment transferring Dickson's estate to Orr and the other respondents.  (See *Parage*, *supra*, 60 Cal.App.4th at p. 1041.)  He attempted to do so by claiming a lack of actual notice of that court proceeding, and blaming the State Controller for misleading him about its existence.

We conclude the trial court properly found no extrinsic fraud.

" '[Extrinsic] fraud is a broad concept that "[tends] to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing." ' [Citations.] The clearest examples of extrinsic fraud are cases in which the aggrieved party is kept in ignorance of the proceeding or is in some other way induced not to appear. [Citation.] In both situations the party is 'fraudulently prevented from presenting his claim or defense.' [Citations.]

"The courts are particularly likely to grant relief from a judgment where there has been a violation of a special or fiduciary relationship." (*Estate of Sanders* (1985) 40 Cal.3d 607, 614-615.)

Under this legal standard, Watkins cannot prevail. First, the State Controller is no longer a party, and Watkins points to no statute or precedent that makes it a "fiduciary" towards escheat claimants, nor any statute requiring it to give special notice to them. (Cf. *Estate of Jenanyan* (1982) 31 Cal.3d 703, 708 [noting that a Probate Code provision required special notice be given to those who asked for it].)

Second, the State Controller's e-mail to Watkins did not *reasonably* cause Watkins to fail to take steps to protect his own interests. "Reliance is a key element of [extrinsic] fraud. [Citation.] '[An] inference of reliance arises if a material false representation was made to persons whose acts thereafter were consistent with reliance upon the representation.' " (*Aheroni v. Maxwell* (1988) 205 Cal.App.3d 284, 292.) Reliance must be *objectively reasonable* to be of any legal effect. (See, e.g., *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 507 [default judgment case].)

Watkins interprets the response "no activity except inquiries" to mean that no *court* actions were pending, instead of drawing the more obvious conclusion, which was that *the State Controller's records* reflected no "activity" except for inquiries. To the extent Watkins or his counsel assumed the State Controller has access to all state probate records, or at least in the relevant counties subject to section 1355 actions, such assumption was not reasonable. The chief counsel's declaration regarding the State Controller's records stands factually unrebutted on this record, and reflects common sense: No reasonable person would interpret the e-mail to be a substitute for a routine

court records search.  In ruling on a motion to vacate, a trial court has the power to weigh evidence and find facts, which must be reviewed for substantial evidence on appeal.  (See, e.g., *Uriarte v. United States Pipe & Foundry Co.* (1996) 51 Cal.App.4th 780, 789-791.)  There is no *evidence* supporting Watkins's claims that the e-mail meant anything but that the State Controller's *own* records did not reflect competing claimants to the escheated estate.

Watkins points out that escheat actions can be filed in any county where the Attorney General maintains offices, specifying Los Angeles, San Francisco, San Diego, and Sacramento counties, although the Attorney General also has offices in Alameda and Fresno counties.  (§§ 401, subd. (1), 1355.)  Watkins asserts it would be "impossible" to check filings "in all those jurisdictions" to look for competing escheat cases.  We disagree.  Checking six county courts, online or using legal support companies, does not seem particularly onerous.  More importantly, Watkins points to no statute or evidence showing the State Controller receives such information.

Watkins concedes he did not seek relief due to excusable neglect.  (§ 473, subd. (b).)  Assuming he meant to seek such relief, it was within the discretion of the trial court to deny it, inasmuch as the trial court found interpreting the e-mail as Watkins did was unreasonable.  That Watkins did not receive personal notice of the relevant action is insufficient to establish relief.  (See *Parage*, *supra*, 60 Cal.App.4th at p. 1044 ["when an executor gives constructive notice to unknown heirs in accordance with the probate statutes, lack of personal notice does not amount to extrinsic fraud or mistake"].)  Nor does Watkins allege that anything *Orr* did induced Watkins to do or not do anything.  Therefore, Watkins did not establish extrinsic fraud as to Orr.  (Cf. *Estate of McGuigan* (2000) 83 Cal.App.4th 639, 642-643, 649-652 [where section 1355 petitioner knew about but withheld information about a closer heir, extrinsic fraud demonstrated].)  As we have said before, the statutory scheme creates a " 'first come, first served' policy" that may seem harsh because in some cases closer-in-blood heirs will lose out to more distant

7

relatives, but that is a lawful result, so long as the section 1355 petitioners have acted fairly in listing all potential heirs known to them. (*McGuigan*, pp. 647-648.) So far as this record shows, Orr did so.

Accordingly, we affirm the order denying the motion to vacate.

## DISPOSITION

The order denying the motion to vacate the judgment is affirmed. Watkins shall pay Orr's costs of this appeal. (Cal. Rules of Court, rule 8.278.)


                                                  DUARTE          , J.


We concur:


      RAYE            , P. J.


      MURRAY        , J.