Filed 1/22/16  Wong v. Wong CA6
Received for posting 3/14/16

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| KEITH TAI WONG,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>NAOMI WONG,<br><br>    Defendant and Respondent. | H040686<br>(Santa Clara County<br>Super. Ct. No. 110PR167179) |

Appellant Keith Tai Wong seeks review of an order denying his petition to set aside a will executed by his sister, Alina Lynn Wong, before her death in April 2010.  In its order the probate court found that appellant's petition was untimely, as it had been filed after the 120-day period prescribed in Probate Code section 8270,[1] and no exception for extrinsic fraud applied within the meaning of section 8007.  Appellant contends that the court should have conducted an evidentiary hearing on his claim of extrinsic fraud, because there were disputed issues of fact as to whether he was prevented from timely contesting the will by his other sister, respondent Naomi Wong,[2] who was the executor and sole beneficiary of the will.  We find no error and therefore must affirm the order.

---

[1] All further statutory references are to the Probate Code.

[2] Because the decedent and the parties all share a last name, we will use first names to distinguish them.

*Background*[3]

Keith was originally the executor of a previous will, which Alina had executed on August 25, 2009. In that document all of the decedent's property was bequeathed to Keith and another brother, Pat Wong. Naomi was not mentioned.

During the last few weeks of Alina's life, Naomi came from San Diego to help their mother care for Alina. According to Keith, by this time Alina "could not speak and seemed unable to understand much of what was going on around her." On April 9, 2010, Alina signed a new will, revoking all prior wills and leaving all of her property to Naomi. Naomi was nominated as executor, except in matters relating to Alina's divorce from her husband, Jason C. Lin. In that limited respect, Keith was to be executor.

Alina died a week later, April 16, 2010. According to Keith, it was only after Alina's death that Naomi procured the signatures of the two witnesses to this second will, though their signatures bore the date of April 9, 2010.

Naomi filed her petition to administer Alina's estate on June 11, 2010. The petition identifies the decedent's will as having been dated April 9, 2010. Notice of the petition was sent to all interested persons, including Keith. Only Jason Lin objected, on the grounds that Naomi was not the executor for matters relating to Alina and Lin's divorce and that Naomi had a personal conflict of interest. Lin also filed a creditor's claim, based on a dispute he had had with Alina over the ownership of marital and other property. That claim was later rejected in its entirety.

On January 28, 2011, Keith filed his own petition for "Probate of Will" and for authorization to administer Alina's estate (though it inaccurately identified Alina as the

---

[3] In summarizing the history of this dispute, both parties assert facts without appropriate and accurate reference to the record. We will disregard any statement by either party that is not supported by evidence contained in the appellant's or respondent's appendix. (Cal. Rules of Court, rule 8.204(a)(1)(C).)

petitioner.)  The petition, which was verified by Keith, specifically mentioned the April 9, 2010 will, which was "currently lodged with the Court," and it stated (all in capital letters), "Keith Wong to serve as executor relating to the divorce only."  A notice of Keith's petition (though mistakenly identifying the estate to be administered as that of Keith) was filed on January 28, 2011.

On August 12, 2011, the court filed its "Order for Probate," appointing Naomi as executor of Alina's will, identified as the April 9, 2010 will.  In an identical order, however, the court appointed Keith executor—like Naomi, with full authority to administer the estate.  Naomi and Keith each signed their respective affirmations as part of the accompanying letters of administration, which stated that the "last will of the decedent [had] been proved."

On May 1, 2013, Naomi filed a petition to remove Keith as co-executor, citing "irreconcilable differences."  Naomi's petition specifically identified the subject will as bearing the date of April 9, 2010, and she submitted a copy of that will as an attachment. Keith consented to being removed, and an order was filed shortly thereafter granting Naomi's petition, revoking the letters testamentary issued to Keith, and removing Keith "effective immediately."

On September 24, 2013, Keith filed a "Petition to Determine Validity of Will Admitted to Probate Based on Undue Influence, Fraud and Failure to Meet Requirements of Probate Code § 6110."[4]  Keith alleged that Naomi had persuaded the two witnesses to

---

[4] Section 6110 prescribes the general requirements for a valid will:  "(a) Except as provided in this part, a will shall be in writing and satisfy the requirements of this section. [¶]  (b) The will shall be signed by one of the following:  [¶]  (1) By the testator. [¶]  (2) In the testator's name by some other person in the testator's presence and by the testator's direction.  [¶]  (3) By a conservator pursuant to a court order to make a will under Section 2580.  [¶]  (c)  [¶]  (1) Except as provided in paragraph (2), the will shall be witnessed by being signed, during the testator's lifetime, by at least two persons each of whom (A) being present at the same time, witnessed either the signing of the will or (continued)

3

sign Alina's will at Alina's funeral, which "not only disgraced the Wong family and defrauded the Court, but subverted the Decedent's testamentary intent to leave her entire estate and control thereof in the hands of her two brothers, [Keith] and Pat Wong."[5] Keith also claimed that the April 2010 will was invalid as "the product of undue influence and fraud perpetrated by the Decedent's own sister, [Naomi]."

Accompanying his petition was Keith's declaration recounting the alleged deception he had experienced from both Naomi and his attorneys regarding the existence of the April 2010 will. He stated that it was not until January 2012 that he discovered that this will, not the previous will of August 2009, was the one that had been admitted to probate. Having "fired" his last attorney in October 2012, he was unable until July 30, 2013, to find an attorney to pursue this matter.

Naomi objected to Keith's petition, asserting its untimeliness under section 8270 and 8226, as well as laches and unclean hands. In response, Keith claimed extrinsic fraud by both Naomi and his three previous attorneys. On December 4, 2013, after extensive briefing by the parties, the court found no extrinsic fraud and denied Keith's petition as barred under section 8270.

*Discussion*

---

the testator's acknowledgment of the signature or of the will and (B) understand that the instrument they sign is the testator's will. [¶] (2) If a will was not executed in compliance with paragraph (1), the will shall be treated as if it was executed in compliance with that paragraph if the proponent of the will establishes by clear and convincing evidence that, at the time the testator signed the will, the testator intended the will to constitute the testator's will."

[5] Along with the petition Keith submitted a declaration from one of those witnesses, Morgan Ulferts, who stated that Naomi had induced him and the other witness to sign the signature page while they were at Alina's funeral. Ulferts stated that Naomi had represented the document as pertaining to Alina's divorce and did not give either witness an opportunity to read it. To Ulferts, it was "upsetting to find out that my signature was obtained for personal gain and fraudulently."

4

Keith's only contention on appeal is that the trial court improperly denied him an evidentiary hearing on the question of whether extrinsic fraud prevented him from filing his petition to determine the validity of the April 2010 will. Naomi initially responds with a challenge to Keith to demonstrate the appealability of the order. She argues, by resort to inapposite judicial and statutory authority, that no appeal is available from a "threshold finding that a petition to revoke probate is untimely."

Naomi's position is without merit. First, she misrepresents the nature of the order. It was not merely a "threshold finding," but a final order denying Keith's petition, which in essence sought to set aside the April 2010 will entirely. Second, while noting that section 1300 affords no appeal from such an order, she overlooks section 1303, subdivision (b), which clearly provides for an appeal from an order denying a request to revoke the probate of a will.[6] We will not deny a litigant his opportunity to obtain appellate review merely because he makes no "affirmative showing" by citing the correct statute if that review is clearly available to him, particularly when the respondent herself fails to cite the applicable statutory authority.

In a separate procedural challenge Naomi asserts that Keith has "waived" (i.e., forfeited) any error in failing to hold an evidentiary hearing before ruling on his petition, because he did not make a "formal objection" to the court's reliance on the parties' declarations and exhibits as evidentiary support for their positions. In the circumstances presented here, however, an objection was unnecessary. At the final hearing on October 31, 2013, Keith's counsel stated, "I would point out that I don't think there's any question that there is extrinsic fraud here. There's no argument on the other side as to the facts that we assert, and the facts that we assert are so egregious that I think

---

[6] Section 1303 states, in pertinent part: "With respect to a decedent's estate, the grant or refusal to grant the following orders is appealable: . . . (b) Admitting a will to probate or revoking the probate of a will."

5

a Court sitting in equity must at least give us our fair time to do an evidentiary hearing and do some discovery to get to the truth of the matter." When asked for a response, opposing counsel stated, "Well, obviously, if the Court doesn't sustain my objection based upon the statute of limitations, yes, we would need an evidentiary hearing, but I don't believe it gets that far. On its face, the petition should be denied based upon the statute of limitations."

It is not clear from the record whether Keith's request for an evidentiary hearing was directed at the timeliness issue (whether extrinsic fraud excused his delay in filing the petition) or at the substance of the petition itself (whether Naomi had procured the will by undue influence and fraud and failed to observe the requirements of section 6110). Naomi's attorney apparently viewed the request as one for a hearing on the underlying allegations. We will give Keith the benefit of any doubt and assume that his request was for a hearing on the timeliness issue. We therefore proceed to examine the merits of Keith's appeal.

Section 8270, subdivision (a), requires a revocation petition to be brought within 120 days after the subject will is admitted to probate. It states: "Within 120 days after a will is admitted to probate, any interested person, other than a party to a will contest and other than a person who had actual notice of a will contest in time to have joined in the contest, may petition the court to revoke the probate of the will. The petition shall include objections setting forth written grounds of opposition." This time limit, "like the time limit for an appeal, is jurisdictional." (*Wolfson v. Superior Court* (1976) 60 Cal.App.3d 153, 160.)

It is undisputed, of course, that Keith's petition was filed well beyond that period—almost two years after the August 2011 probate order. Consequently, section 8226, subdivision (a), makes the admission of the April 2010 will conclusive, "subject to Section 8007." Section 8007 addresses the specific issue presented here. It states: "(a) Except as provided in subdivision (b), an order admitting a will to probate or

6

appointing a personal representative, when it becomes final, is a conclusive determination of the jurisdiction of the court and cannot be collaterally attacked. [¶] (b) Subdivision (a) does not apply in either of the following cases: [¶] (1) The presence of extrinsic fraud in the procurement of the court order. . . .”

" 'Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence, fraudulently prevented from fully participating in the proceeding. [Citation.] Examples of extrinsic fraud are: concealment of the existence of a community property asset, failure to give notice of the action to the other party, and convincing the other party not to obtain counsel because the matter will not proceed (and then it does proceed). [Citation.] The essence of extrinsic fraud is one party's preventing the other from having his day in court.' " (*Estate of McGuigan* (2000) 83 Cal.App.4th 639, 649-650, quoting *City and County of San Francisco v. Cartagena* (1995) 35 Cal.App.4th 1061, 1067; *In re Marriage of Melton* (1994) 28 Cal.App.4th 931, 937-938.)

Thus, extrinsic fraud may be found when the complaining party is " 'fraudulently prevented from presenting his claim or defense.' " (*Estate of Sanders* (1985) 40 Cal.3d 607, 614.) Importantly, however, that equitable relief may be had " 'only upon proof of *extrinsic* and *collateral* fraud . . . A showing of fraud practiced in the trial of the original action will not suffice.' " (*Ibid.*) The underlying issue presented in this appeal, therefore, is not whether Naomi exhibited fraud in the procuring of a signed and witnessed will, but whether she subsequently engaged in conduct that fraudulently prevented Keith from bringing his petition until expiration of the 120-day limitations period. Keith contends that the probate court should have held an evidentiary hearing before determining that Naomi did not engage in such conduct.

Keith did present evidence to the probate court on this specific issue, however: Together with his petition to determine the validity of the April 2010 will, he filed a declaration attesting to his unawareness until January 2012 that this will had been

7

admitted to probate. He stated that he learned of the second will only in discussing with Naomi—on a date Keith did not specify—how he "would distribute assets to the family as Executor." He attributed his ignorance before then to his attorneys, the second of whom he met with to discuss Alina's divorce—not, apparently, to discuss the rest of Alina's testamentary wishes, which he would have believed he was authorized to implement if he had been acting as co-executor. According to Keith, he told his attorney about his discovery but was advised to "wait until the probate case was completed before raising the issue of the [April 2010] will with the Court."

None of Keith's sworn statement evinces an active, deliberate effort by Naomi to keep Keith in ignorance of the proceeding to probate the April 2010 will. Naomi's petition for probate identified the will as that of April 9, 2010, and even after receiving notice of that petition, Keith himself failed to confirm that the will it referenced was the one he believed it to be. Even Keith's own petition for probate, which he signed and filed in January 2011, identified the will as being that of April 9, 2010. Consistent with the provisions of that will, his petition also proposed that Keith act as executor "relating to the divorce only." The August 12, 2011 orders for probate, one appointing Naomi and one appointing Keith, both referred to the April 2010 will. Thus, Keith failed to demonstrate that it was Naomi's deceptive conduct toward him, not his own negligence, that prevented him from fully participating in the proceeding. (Cf. *Estate of McGuigan*, *supra*, 83 Cal.App.4th at pp. 649-650.)

Even if there was some additional evidence of fraudulent conduct by Naomi that prevented Keith from challenging the will within 120 days, he offered none when invited to do so by the probate court at the October 24, 2013 hearing on Keith's revocation petition. The court continued the hearing for one week in order to "get some briefing on the time bar issue" and allow Keith and any other interested party to "provide any additional support . . . on the issue of whether Keith's claims are time barred under Probate Code 8270." If there was additional evidence to assist the probate court in

8

determining whether extrinsic fraud excused Keith's delay, that was the time to present it. Keith submitted no additional testimony or documentary evidence to show extrinsic fraud, however; instead, he submitted only argument, relying on his previous declaration and noting that Naomi herself had not submitted evidence to the contrary. At the subsequent hearing on October 31 the court asked if either party had anything additional to present, including "any new matter that [it] should consider." No additional evidence was offered. The court therefore did not err in basing its conclusion on the evidence it already had.

Keith's argument on appeal suffers from an additional fatal defect. In his declaration he stated that he learned of the existence of the April 2010 will from Naomi; and while he did not specify the date of her disclosure, he did know by January 2012 that this will had been admitted to probate. Even if extrinsic fraud prevented him from seeking to revoke it before then, any tolling would have ended as of that date. Keith's excuse was that he did not know how to proceed, and he blamed his third attorney for advising him to wait. After firing that attorney in October 2012, he did not find another to pursue this matter until July 30, 2013. Almost two months later, his revocation petition was filed.

At the October 31, 2013 hearing the court found that Keith's proffered reasons for delaying his petition after January 2012—primarily the deficient legal representation by his three previous attorneys—did not excuse his own lack of diligence.[7] Because Keith failed to bring his petition within 120 days even *after* discovering the alleged fraud, his petition was found to be untimely. We cannot find any error in this determination. The

---

[7] On appeal Keith continues to exert significant energy blaming his former attorneys for his failure to notice that the April 2010 will was being probated rather than the August 2009 one. Although he has accused them of fraudulent concealment and misrepresentation in this proceeding, we have been made aware of no action against any of these attorneys arising from their representation of Keith.

9

probate court thus correctly determined that Keith's collateral attack was barred by sections 8270, 8007, and 8226.

It may well be that Naomi exerted undue influence over Alina and induced witnesses to represent falsely that they had witnessed Alina's execution of the will before her death. But such misconduct, if it occurred, cannot be addressed in this proceeding, because the conclusive provisions of the applicable statutory scheme deprive the courts of jurisdiction to provide a remedy. Any evidentiary hearing beyond what Keith had already received would not have helped him succeed in his petition, because any evidence of extrinsic fraud *before* January 2012 became moot at that time. Because the statutory exception provided in section 8007 was unavailable to Keith, the probate order of August 2011 was properly deemed conclusive, and Keith's petition was properly denied.

*Disposition*

The order is affirmed.

_____

ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

GROVER, J.