[No. C008412. Third Dist. Oct. 31, 1990.]

Estate of GEORGE SUPECK, Deceased.
NICK SUPECK et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Douglas H. Drake for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

**OPINION**

**SIMS, Acting P. J.**—Appellants Nick Supeck and James F. Supeck filed a petition in the trial court pursuant to Code of Civil Procedure section 1355 (hereafter section 1355)[1] to claim the escheated estate of George Supeck.

---

[1] Section 1355 provides: "Within five years after date of entry of judgment in any proceeding had under the provisions of Chapter 5,[*] or within five years after completion of notice by publication in an escheat action taken under the provisions of Section 1415, a person not a party or privy to such proceeding or action, if not otherwise barred, may file a petition in the Superior Court of the County of Sacramento, or as provided in Section 401, showing his claim or right to the money or other property, or the proceeds thereof.

"Said petition shall be verified; and, in a proceeding for the recovery by the petitioner as heir, devisee, or legatee, or the successor in interest of an heir, devisee or legatee, of money or other property received by the State from the estate of a decedent under the provisions of Article 1 of Chapter 6,[†] such petition, among other things must state:

"The full name, and the place and date of birth of the decedent whose estate, or any part thereof, is claimed.

"The full name of such decedent's father and the maiden name of his mother, the places and dates of their respective births, the place and date of their marriage, the full names of all

---

[*] Section 1410 et seq.
[†] Section 1440 et seq.

Nick Supeck is the decedent's brother; James F. Supeck is the decedent's nephew.

After the petition was filed and the five-year statute of limitations prescribed by section 1355 had expired, petitioners' attorney learned of the

---

children the issue of such marriage, with the date of birth of each, and the place and date of death of all children of such marriage who have died unmarried and without issue.

"Whether or not such decedent was ever married, and if so, where, when and to whom.

"How, when and where such marriage, if any, was dissolved.

"Whether or not said decedent was ever remarried, and, if so, where, when and to whom.

"The full names, and the dates and places of birth of all lineal descendants, if any, of said decedent; the dates and places of death of any thereof who dies prior to the filing of such petition; and the places of residence of all who are then surviving, with the degree of relationship of each of such survivors to said decedent.

"Whether any of the brothers or sisters of such decedent ever married, and, if so, where, when and whom.

"The full names, and the places and dates of birth of all children who are the issue of the marriage of any such brother or sister of the decedent, and the date and place of death of all deceased nephews and nieces of said decedent.

"Whether or not said decedent, if of foreign birth, ever became a naturalized citizen of the United States, and, if so, when, where, and by what court citizenship was conferred.

"The post-office names of the cities, towns or other places, each in its appropriate connection, wherein are preserved the records of the births, marriages and deaths hereinbefore enumerated, and, if known, the title of the public official or other person having custody of such records.

"The nationality of each of the heirs of the decedent.

"The street address of each of the heirs of the decedent.

"If, for any reason, the petitioner is unable to set forth any of the matters or things hereinbefore required, he shall clearly state such reason in his petition.

"At least 20 days before the hearing of the petition, a copy of the petition and notice of hearing must be served on the Attorney General and on the Controller, and the Attorney General may answer the same at his discretion.

"If such claim includes a claim to real property or any interest therein, the petitioner shall record in the office of the county recorder of the county in which the real property is situated, a notice of the pendency of the petition containing the object of the action and a description of the property in the county affected thereby. From the time of filing such notice for record only, shall a purchaser or encumbrancer of the property be deemed to have constructive notice of the pendency of the action, and only of its pendency against parties designated by their real names.

"The court must thereupon try the issue as issues are tried in civil actions; and if it is determined that such person is entitled to the money or other property or the proceeds thereof, it must order the property, if it has not been sold, to be delivered to him, or if it has been sold and the proceeds thereof paid into the State Treasury, it must order the Controller to draw his warrant on the Treasurer for the payment of the same, but without interest or cost to the State. A copy of such order, under the seal of the court, shall be a sufficient voucher for drawing such warrant.

"All persons who fail to appear and file their petitions within the time limited are forever barred; saving, however, to infants and persons of unsound mind, the right to appear and file their petitions at any time within the time limited, or within one year after their respective disabilities cease."

existence and whereabouts of decedent's surviving daughter, Dolores New-man, who had not filed a section 1355 petition.

Despite the fact that the Attorney General did not oppose the petition, the trial court denied the petition on the ground that petitioners could not prove their entitlement to the estate due to the existence of a prior heir whose whereabouts were known. The court subsequently entered judgment against petitioners, from which they appeal.

The Attorney General has not filed a respondent's brief.

We shall reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

We recite the facts as set out in appellants' opening brief. (Cal. Rules of Court, rule 17(b).)

Decedent George Supeck died on November 12, 1982.

An order of final distribution of decedent's estate pursuant to former Probate Code section 1144[2] distributing the estate to the State of California, was entered on April 30, 1984.

Nick Supeck and James F. Supeck filed a petition claiming the escheated estate on April 24, 1989. The petition stated that decedent had no known heirs at the time of the final distribution of the estate, that decedent was a widower who had no children and whose parents predeceased him, and that other information regarding the family's history was unknown.

No other petition to claim the estate was filed before the five-year statute of limitations for filing petitions expired on April 30, 1989.

Sometime in May 1989 Dolores Newman, decedent's daughter, tele-phoned petitioners' counsel and informed him of her relationship to the decedent. Counsel conveyed this information to the trial court before the court rendered its decision on the petition.

In a letter to petitioners' counsel filed with the court on August 3, 1989, the Attorney General notified counsel it had examined the petition, includ-ing the proof submitted for review, and believed the proof established that

---

[2] This section, dealing with the summary disposition of small estates, has been superseded by Probate Code sections 7660-7666. (Stats. 1988, ch. 1199, § 57.5.)

petitioners were entitled to recover "all or a portion of the proceeds of the estate." The letter further stated the Attorney General would not appear at the hearing on the petition to contest the matter.

A "calendar note," apparently prepared by superior court staff for the trial court's use at the initial hearing stated, inter alia: "An escheat claimant is entitled only to the share of the escheated assets to which the claimant would have been entitled in the decedent's probate, as proved to the satisfaction of the court in the escheat claim proceeding. CCP 1355. *Mundt* v. *Calif.* (1976) 54 CA3d 940, 127 C.Rptr. 20. *Mannheim* v. *Sup. Ct.* (1970) 3 C3d 678, 692 fn.11, 91 C.Rptr 585. *Estate of Ronkendorf* (1958) 160 Ca2d 145, 153. *Estate of Costa* (1952) 109 CA2d 735, 744."

At the initial hearing on the matter, the trial court expressed the view that the petition failed to comply with section 1355 in that it did not contain a complete list of the heirs and their relationships to the decedent. The court also noted that the Attorney General's letter of August 3 had not stated unequivocally that petitioners were entitled to receive the entire estate.

At the next hearing, Deputy Attorney General Peter Shack appeared for the purpose of informing the court that the Attorney General's Office agreed petitioners were entitled to the entire estate. Deputy Attorney General Shack specifically argued that the holding of *Mundt* v. *State of California* (1976) 54 Cal.App.3d 940 [127 Cal.Rptr. 20] compelled this result, contrary to the interpretation of this case in the "calendar note."

The trial court engaged Shack in the following colloquy: "THE COURT: Don't the escheat statutes have as an underlying premise the fact the claimant has to show entitlement to the estate? Isn't that what they say? [¶] MR. SHACK: It says entitlement. [¶] THE COURT: How can one show entitlement to an estate if there are other people who are closer to the decedent, that are in existence, and whose whereabouts are known? How can you show entitlement to the estate if there is that intervening heir who otherwise would be entitled to the estate? [¶] MR. SHACK: You can't do it while the five-year period is running; you don't show it even at this time amount [*sic*]. But after the five years is over, the other people who haven't made a claim have lost their entitlement, and rather than escheat, the whole thing goes to [the heirs who have filed a claim] . . . ."

At the final hearing the trial court stated: "The question is one of entitlement, establishing entitlement, . . ."

The trial court's ruling (later incorporated into the judgment) stated: "The petition of Nick Supeck and James F. Supeck is denied. Petitioner's

counsel stipulated at hearing that the decedent has a living daughter whose whereabouts is known. The daughter would have been entitled to the entire estate if she had filed a timely claim. Although the daughter did not file a claim and therefore is barred from receiving the escheated estate, her failure to file a timely claim does not establish the entitlement of the petitioners to the estate. *Mundt* v. *State of California* (1976) 54 CA 3d 940 relied upon by petitioners is distinguishable. In *Mundt* the whereabouts of the prior heirs was not known at the time of trial on the CCP Section 1355 petition. Since there is a prior heir whose whereabouts is known, petitioners cannot show entitlement to the estate under CCP Section 1355."

The effect of the trial court's ruling was therefore that the estate permanently escheated to the state.

DISCUSSION

A. *Standard of Review.*

■ Under rule 17(b) of the California Rules of Court, where respondent has failed to file a brief ". . . the court may accept as true the statement of facts in the appellant's opening brief and, unless the appellant requests oral argument, may submit the case for decision on the record and on appellant's opening brief." The failure of respondent to file a brief does not mandate automatic reversal; rather, we examine the record and reverse only if prejudicial error is found. (*Ruttenberg* v. *Department of Motor Vehicles* (1987) 194 Cal.App.3d 1277, 1282 [240 Cal.Rptr. 249].)

B. *The Applicable Statutes.*

Former Probate Code section 1027, in effect when the petition herein was filed, provided in relevant part: "(i) The property so distributed shall be held by the State Treasurer for a period of five years from the date of the decree making the distribution, within which time any person may claim the estate or any part thereof in the manner provided by Title 10 (commencing with Section 1300) of Part 3 of the Code of Civil Procedure. [¶] (j) Any person who does not appear and claim, as herein required, shall be forever barred, and such property, or so much thereof as is not claimed, shall vest absolutely in the state." (Stats. 1987, ch. 923, § 54.)[3]

Section 1355 sets out the requirements for a petition filed to claim an escheated estate, including the presentation of detailed information on the

---

[3] The substance of the quoted provisions is now found in Probate Code section 11903. (Stats. 1988, ch. 1199, § 91.5, operative July 1, 1989.)

identities and whereabouts of all potential heirs of the decedent or an express statement why the petitioners are unable to set forth any particular information called for. (See fn. 1, *ante*.) It also provides that when a petition has been filed with the trial court, "The court must thereupon try the issue as issues are tried in civil actions; and if it is determined that such person is entitled to the money or other property or the proceeds thereof, it must order the property, if it has not been sold, to be delivered to him, . . . [¶] All persons who fail to appear and file their petitions within the time limited are forever barred; saving, however, to infants and persons of unsound mind, the right to appear and file their petitions at any time within the time limited, or within one year after their respective disabilities cease."

Code of Civil Procedure section 1441 provided in relevant part at the time of trial herein: "Money or other property distributed to the State under Sections 1027 or 1144 of the Probate Code, if not claimed within five years from the date of the decree making such distribution, as provided in Chapter 3 [§ 1355 et seq.], is permanently escheated to the State without further proceeding; . . ."[4] Thus, although section 1355 refers on its face only to a five-year statute of limitations dating from entry of judgment in an escheat proceeding initiated by the Attorney General pursuant to section 1410 et seq., section 1441 expressly makes the five-year statute of limitations dating from the order of final distribution in probate applicable to section 1355 proceedings.

### C. Relevant Case Law.

#### 1. Mannheim.

In *Mannheim v. Superior Court* (1970) 3 Cal.3d 678 [91 Cal.Rptr. 585, 478 P.2d 17] our Supreme Court reiterated the long-standing judicial view that the law does not favor escheats. (*Id.* at p. 691.) In line with this principle, the court held: "Although the possibility of escheat may arise at the death of the decedent without heirs, the state's interest does not truly vest until the end of five years from the date of distribution. Until then, the state's interest is 'conditional' or 'provisional' and the state official (State Controller or State Treasurer) receiving the property distributed pursuant to [Probate Code] section 1027 is a mere stakeholder for possible claimants. This conclusion was recognized in [Estate of] *Lindquist* [(1944) 25 Cal.2d 697] as to unknown heirs of the decedent." (*Id.* at p. 690.) The court also held: "All heirs are given ample opportunity to claim their portion of an

---

[4] This provision was later amended to reflect the repeal of Probate Code sections 1027 and 1144 and their replacement in part by sections 7663 and 11900. (Stats. 1988, ch. 1199, § 10, operative July 1, 1989.)

estate during the normal period of administration. Unknown heirs who fail to come forward during this period cannot later complain of the distribution to other known heirs after it has become final in such an *in rem* proceeding. (*Estate of Radovich* (1957) 48 Cal.2d 116, 120-121 []; Code Civ. Proc., § 1908.)" (*Id.* at p. 692.)

### 2. *Mundt.*

In *Mundt v. State of California, supra,* 54 Cal.App.3d 940 the state appealed from an order distributing escheated property to decedent's cousins who had filed a section 1355 petition. It was stipulated that the decedent had two brothers, who would be closer heirs than petitioners if they were alive, and that petitioners had no documentary proof of the brothers' death. (*Id.* at p. 942.) However, neither brother had filed a claim before the expiration of the five-year period provided by former Probate Code section 1027. (*Id.* at p. 943, fn. 1.)

The state contended that unless the brothers were proven dead, they were decedents' heirs at law, and as such were the only persons entitled to claim the estate within the statutory five-year period. (54 Cal.App.3d at p. 943.) The court rejected this contention: "[W]hen the heirs are unknown at the time of distribution, a special procedure under section 1027 is set up to preserve the rights of the heirs. In a 1027 procedure the heirs are *not* bound by the initial distribution to the state, but have five years to come forward and claim the property. Therefore, decedent's brothers had the right to appear at any time within the five years and reclaim the escheated estate. Since neither of the brothers did appear, respondents as those persons next entitled to succeed have the right to claim the estate." (*Ibid.,* original italics.)

The court also rejected the state's contention that the brothers must be considered "known" heirs, because this argument disregarded the language of the original escheat order pursuant to former Probate Code section 1027, which specifically recited as required by the statute that "the heirs-at-law of said deceased *are unknown.*" (*Mundt, supra,* 54 Cal.App.3d at p. 944, original italics.) If the existence of the brothers was not made known to the court until the filing of the section 1355 petition, they were not "known" heirs for purposes of escheat law. (*Ibid.*)

The court defined the burden of proof on section 1355 petitioners with respect to other potential claimants as follows: "We find nothing in the escheat statutes which requires one set of claiming heirs to prove that other heirs are dead or otherwise incapacitated. Respondents need only prove to the satisfaction of the trial court that the prior heirs were never married and

have no descendants, and that respondents do not know the whereabouts of the prior heirs." (*Mundt, supra,* 54 Cal.App.3d at p. 943.)

### 3. *Cruz.*

In *Estate of Cruz* (1989) 215 Cal.App.3d 1416 [264 Cal.Rptr. 492] the trial court found that the petitioner, the decedent's niece, was the sole known heir for and entitled to possession of the whole of decedent's escheated estate; however, the court refused to distribute the estate before the expiration of the statutory five-year waiting period. (*Id.* at pp. 1417-1418.) This court held that the trial court's refusal to distribute the estate immediately was error. We explained that the court's apparent concern over the possibility of other, as yet unknown, heirs coming forward before the five years had ended did not justify delaying distribution because ". . . [U]nknown heirs do not have a vested interest in an escheated estate during the state's five-year waiting period. The underlying principle is that escheats are disfavored and are to be avoided if possible . . . [¶] The five-year period delaying the final escheat to the state does not vest an absolute right in all heirs to state claims during that time. That delay is merely a final attempt to prevent the escheat and only occurs where there is a possibility of an escheat. Where there is a mechanism to distribute the estate and prevent the escheat there is no reason to provide the extra five-year period. (*Id.,* at p. 692.) Heirs who lose the opportunity to present claims during the five-year period because another heir claims the estate first therefore suffer no disadvantage greater than that endured by any heir who fails to come forward during the normal estate administration. (*Ibid.*) Thus, immediate distribution is proper when the court finds an heir is entitled to an escheated estate during the five-year period." (*Id.* at pp. 1418-1419.)

### D. *The Trial Court's Error.*

■ As noted above, the trial court denied the petition on the sole ground that petitioners could not show entitlement to the estate because there was a prior heir (decedent's daughter) whose whereabouts was known at the time of trial on the petition, unlike the whereabouts of the prior heirs in *Mundt, supra*. In so ruling, the court erred.

A permanent escheat is to be avoided if possible. (*Mannheim, supra,* 3 Cal.3d at p. 690.) Here, it was possible to avoid a permanent escheat by distributing decedent's estate to petitioners, the only timely claimants, whose proof of heirship was never in dispute. The trial court expressly and correctly acknowledged that decedent's daughter was foreclosed from claiming the estate by her failure to file a timely petition; nevertheless, the court concluded that her status as a "prior heir" proved petitioners were

not "entitled" to the estate within the meaning of section 1355. Neither the language of the statute nor the cases cited above support this conclusion.

*Mundt, supra,* holds that in escheat, unlike probate, the status of "prior heir" in itself conveys no entitlement to claim an estate. That entitlement belongs only to heirs who file timely section 1355 petitions, whatever their degree of kinship to the decedent. (54 Cal.App.3d at p. 943.) If a "prior heir" who could file a timely claim fails to do so, the express terms of section 1355 bar him or her absolutely from making a claim to the estate thereafter; thus it is meaningless to refer to such a person as a "prior heir" after the deadline for making a claim has passed. After that time the existence of such a person logically cannot foreclose the claim to entitlement of an heir who has previously filed a section 1355 petition.

Moreover, in *Cruz, supra,* we held in reliance on *Mannheim, supra,* that the principle of avoiding permanent escheats compels the immediate distribution of an escheated estate to the sole known heir even before the expiration of the five-year waiting period, notwithstanding the possibility that unknown heirs closer in kinship to the decedent might file later claims within the five-year deadline. (*Cruz, supra,* 215 Cal.App.3d at pp. 1418-1419.) If an escheated estate must be distributed to a proper claimant before the five-year escheat period has ended, even though other potential claimants who could show "entitlement" within the meaning of section 1355 may exist, then a fortiori such an estate must be distributed after the end of the five-year period to the only proper claimants who have come forward within that time, such as petitioners here.

In addition to the erroneous belief that decedent's daughter was a "prior heir" for purposes of escheat, the trial court based its ruling on the fact that her whereabouts were known to the court at the time of trial on the section 1355 petition, unlike those of the decedent's brothers in *Mundt, supra.* The court apparently relied on the statement in *Mundt* that section 1355 petitioners have the burden of proving to the trial court's satisfaction they do not know the whereabouts of any prior heirs. (54 Cal.App.3d at p. 943.) But given the holding of *Mundt* that the possible existence of "prior heirs" who have not filed timely claims cannot affect the entitlement of heirs who have done so, the statement relied on by the trial court must be considered dictum. It is not apparent why the fact that the whereabouts of a person ineligible to make a claim have become known to the trial court after the five-year deadline has passed should render the claiming heirs unable to prove their entitlement to the estate.

Here the appellants, the respondent and this court all agree that the judgment must be reversed. Given this lineup, the appellants win.

## Disposition

The judgment is reversed. The parties shall bear their own costs on appeal.[5]

Scotland, J., and Nicholson, J., concurred.

---

[5] The author of this opinion would award costs on appeal to appellants. However, in the majority's view the state should not be penalized by having to pay costs on appeal. It did not contest plaintiff's entitlement to the estate; in fact, it urged the trial court to grant the relief requested.