Filed 1/7/16  Haugen v. Wiley CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| OLE HAUGEN,<br><br>　　Plaintiff and Appellant,<br><br>　　　v.<br><br>JEAN WILEY et al.,<br><br>　　Defendants and Respondents. | G050145<br><br>(Super. Ct. No. 30-2010-00423544)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Robert J. Moss, Judge.  Affirmed.

Law Office of Patrick J. Evans and Patrick J. Evans for Plaintiff and Appellant.

Allan B. Weiss & Associates, Allen L. Thomas, Sivi G. Pederson and Gordon C. Stuart for Defendants and Respondents.

# INTRODUCTION

Ole Haugen appeals from the dismissal of his derivative action after his membership in the nonprofit mutual benefit corporation Palm Beach Park Association (PBPA) was terminated for nonpayment of rent. PBPA is the homeowners' association managing a mobile home park in which Haugen leased space. After suing the association's board of directors and its lender in a derivative suit, Haugen ceased to pay rent. The association terminated his membership. The board member defendants are the respondents in this appeal.

Haugen's opening brief ranges far beyond the issue decided in the motion to dismiss. The trial court did not rule that Haugen's mobile home was forfeited or that he could or could not be evicted from the park, or on any issue relating to a lease or to real estate. All it decided was that Haugen could not maintain a derivative action in PBPA's name if he was no longer a member of the association. This decision rests on strong legal principles and on California Supreme Court precedent. We therefore affirm it.

# FACTS

Palm Beach Park is a mobile home park in San Clemente. Before 2007, PBPA was the lessee of the ground lease for the park.[1] To rent a space for a mobile home in the park, a person must become a member of PBPA, paying a membership fee, and sign a lease with the association as lessor. Haugen became a PBPA member in July 2007.

In August 2007, the park's owner informed PBPA of an offer to buy the property. The ground lease included a right of first refusal for PBPA, and the members

---

[1] From the record before us, it appears that the PBPA was organized as a nonprofit public benefit corporation in December 1997. Its stated purpose at that time was "to facilitate the purchase and operation of a mobilehome park by its residents" and "to manage a common interest development under the Davis-Stirling Common Interest Development Act."

voted to exercise this right. The price they had to match was over $24 million. The board assessed each member $200,000 and borrowed the rest ($16 million) from Thrivent Financial for Lutherans (Thrivent). Escrow closed on the sale in December 2007, and PBPA became the owner of the property.

Some members paid the assessment up front. Some paid part of it and pledged the rest. Most members, however, could not come up with that kind of cash, and they entered into a deal with the association to pay the assessment in monthly installments. Appellant Haugen was one of these. Haugen signed a promissory note secured by his PBPA membership and his lease in connection with this transaction.

Another PBPA member filed suit in November 2010. This action was later consolidated with eight other cases, all filed in 2010 and presumably involving the same issues. As of the fourth amended and consolidated complaint, the defendants included PBPA, three board members, some lawyers and law firms, a bank, and Thrivent. Haugen was also a plaintiff in this suit (the consolidated action).

In December 2010, Haugen filed his derivative action as sole plaintiff. He filed his fourth amended derivative complaint in June 2012, naming the association, present and former board members, and Thrivent as defendants. The fourth amended complaint alleged five causes of action on PBPA's behalf: three against Thrivant and two against present and former PBPA board members for breaches of their duty to the association. The derivative suit was assigned to the same department as the consolidated action and deemed related to it, but these two cases maintained their separate existence.[2]

The consolidated action proceeded to be tried to the court in stages. Phase I resulted in several rulings in May 2013, although no judgment was rendered since the

---

[2] The court files became hopelessly confused as documents pertaining to the derivative action were filed in the consolidated action, possibly pursuant to an early order of the court before the paper avalanche began. On July 18, 2014, several months after ruling on the motion to dismiss Haugen's derivative action, the court ordered the parties to list all the misfiled documents for each case and to refrain from misfiling future documents, under pain of rather severe sanctions.

trial was not complete. The trial court ruled that PBPA did not have legal authority to assess its members $200,000 each, but the board did have the authority to authorize the $16 million loan from Thrivent. The court also held that the park was a resident-owned mobile home park (Civ. Code, § 799, subd. (c)), not a common-interest development, subject to the Davis-Stirling Common Interest Development Act (now Civ. Code, §§ 4000 et seq., formerly §§ 1350 et seq.)

After the first phase of the trial, respondents moved to dismiss Haugen's derivative action. The basis of the motion was Haugen's failure to pay his monthly rent and the monthly installments of his assessment. According to the evidence before the court, Haugen stopped paying rent in October 2013 and, as of March 2014, he had paid neither rent nor utilities charges. Because he was seriously in arrears on both, the association terminated his membership. Having lost his membership, Haugen no longer had standing to maintain a derivative action on the corporation's behalf. The trial court granted the motion, basing its ruling on Haugen's failure to pay rent. Judgment was entered on May 5, 2014. Haugen filed his notice of appeal on May 12, 2014.

## DISCUSSION

We are hampered in our review by the lack of any statutory authority for respondents' motion to dismiss Haugen's derivative action, a deficiency to which Haugen did not object in the trial court.[3] Respondents assert that Code of Civil Procedure section 581 authorized the motion; this section states several grounds for dismissing a plaintiff or

---

[3] We asked the parties for supplemental briefing on this subject.

4

complaint, but none fits these circumstances.[4]  Respondents could have made a motion

for summary judgment, on the ground that Haugen's derivative action had no merit,

because he lacked standing to maintain it after losing his association membership.  (Code

Civ. Proc., § 437c, subd. (a); see *Kinlaw v. State of California* (1991) 54 Cal.3d 326, 328;

*Two Jinn, Inc. v. Government Payment Service, Inc.* (2015) 233 Cal.App.4th 1321, 1332-

1333;  *Gantman v. United Pacific Ins. Co.* (1991) 232 Cal.App.3d 1560, 1563.)  A

summary judgment motion, however, requires compliance with a process set forth in

Code of Civil Procedure section 437c, including an extended notice period and the

submission of separate statements.  (Code Civ. Proc., § 437c, subds. (a), (b)(1), (b)(3).)

That process was not followed here.  Accordingly, we must first determine the standard

by which we are to review the dismissal of Haugen's derivative action.

Respondents' motion appears to call for the application of a rule of law to

undisputed facts, i.e., Haugen's failure to pay his rent and the consequent termination of

his membership in PBPA.  The standard of review for a motion of this kind is de novo,

unless "the pertinent inquiry requires application of experience with human affairs."

(*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888;

see *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 384-385; *General Mills, Inc. v.*

---

[4]     Code of Civil Procedure section 581 provides, in pertinent part: "(b) An action may be dismissed in any of the following instances:  [¶] (1) With or without prejudice, upon written request of the plaintiff to the clerk, filed with papers in the case, or by oral or written request to the court at any time before the actual commencement of trial, upon payment of the costs, if any. [¶] (2) With or without prejudice, by any party upon the written consent of all other parties.  [¶] (3) By the court, without prejudice, when no party appears for trial following 30 days' notice of time and place of trial. [¶] (4) By the court, without prejudice, when dismissal is made pursuant to the applicable provisions of Chapter 1.5 (commencing with Section 583.110).  [¶] (5) By the court, without prejudice, when either party fails to appear on the trial and the other party appears and asks for dismissal. [¶] (c) A plaintiff may dismiss his or her complaint, or any cause of action asserted in it, in its entirety, or as to any defendant or defendants, with or without prejudice prior to the actual commencement of trial.  [¶] (d) Except as otherwise provided in subdivision (e), the court shall dismiss the complaint, or any cause of action asserted in it, in its entirety or as to any defendant, with prejudice, when upon the trial and before the final submission of the case, the plaintiff abandons it. [¶] (e) After the actual commencement of trial, the court shall dismiss the complaint, or any causes of action asserted in it, in its entirety or as to any defendants, with prejudice, if the plaintiff requests a dismissal, unless all affected parties to the trial consent to dismissal without prejudice or by order of the court dismissing the same without prejudice on a showing of good cause."

A complaint may also be dismissed under this section if the summons is not served within two years, if the case is not brought to trial in five years, if the summons is quashed, or if one of the parties fails to appear at trial.  (Code Civ. Proc., § 581, subds. (g), (h), (l).)

5

*Franchise Tax Bd.* (2012) 208 Cal.App.4th 1290, 1302-1303.) None of the issues here calls for application of experience with human affairs.

## I.        Motion to Dismiss the Derivative Action

The issue presented for our de novo review is a narrow one. Was Haugen's derivative suit properly dismissed for lack of standing because he lost his membership in PBPA for nonpayment of rent? The answer is yes. Regardless of the assessment's validity, an issue we do not address, Haugen was clearly obligated to pay rent for his space in the park, and the association's bylaws clearly allowed it to terminate his membership if he did not pay.[5] Once he was no longer a member of PBPA, he could not go forward with a lawsuit on its behalf.

Our Supreme Court articulated this principle in connection with for-profit corporations in *Grosset v. Wenaas* (2008) 42 Cal.4th 1100 (*Grosset*). In *Grosset*, a stockholder who had commenced a derivative suit lost his stock after his corporation merged with another. (*Id.* at p. 1106.) The court held that under Corporations Code section 800[6], a derivative plaintiff had to be a stockholder not only when the suit commenced but also throughout its existence.[7] With a few exceptions, if the plaintiff no longer held stock, the derivative suit had to be dismissed. "[W]hen the stockholder relationship is terminated, either voluntarily or involuntarily, a derivative plaintiff loses standing because he or she no longer has even an indirect interest in any recovery pursued for the corporation's benefit." (*Id.* at p. 1115.)

---

[5] Article IV, section 4 of the PBPA bylaws provided that a membership "shall terminate" if a member does not pay rent after it becomes due and payable.

[6] All further statutory references are to the Corporations Code unless otherwise indicated.

[7] Section 800 provides in pertinent part, "No action may be instituted or maintained in right of any domestic or foreign corporation by any holder of shares . . . of the corporation unless both of the following conditions exist:" (§ 800, subd. (b).) The conditions are (1) the plaintiff must allege that he or she was a shareholder at the time of the relevant transaction and (2) the plaintiff must allege a demand on the board or an excuse for not making a demand. The statute provides some exceptions to the basic rule and permits the court to allow a derivative suit to go forward under certain specified conditions, even if the plaintiff does not meet the continuing ownership rule. (*Ibid*.)

Unlike the for-profit corporation at issue in *Grosset*, PBPA is a nonprofit mutual benefit corporation. Before 1980, when a set of statutes governing nonprofit corporations became effective, nonprofit corporations were subject to general corporation law except when a statute specifically applied to nonprofit corporations. (3 Ballantine & Sterling, Cal. Corporation Laws (4th ed. 2015) Nonprofit Corporations, § 401.01[2] p. 19-37 (Ballantine & Sterling).) As might be expected, this system created considerable confusion, as courts struggled to apply the correct law. (*Id.* § 402.02[1] p. 19-40.) The Legislature solved the problem by creating separate sets of laws for each type of corporation: for profit, nonprofit public benefit, nonprofit mutual benefit, and nonprofit religious. With respect to public benefit and mutual benefit corporations, the intent was to establish a self-contained body of law to govern these types of entities and yet adhere as closely as possible to the organization and language of general (for-profit) corporation law. (*Id.* § 401.04[1], [2] at pp. 19-44-19-46.)

Section 7710 is the mutual benefit corporation statute equivalent of section 800. Subdivision (b) provides, "No action may be instituted or maintained in the right of any corporation by any member of such corporation unless both of the following conditions exist: [¶] (1) The plaintiff alleges in the complaint that plaintiff was a member at the time of the transaction or any part thereof of which plaintiff complains, or that plaintiff's membership thereafter devolved upon plaintiff by operation of law from a holder who was a holder at the time of transaction or any part thereof complained of; and [¶] (2) The plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and alleges further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file." Unlike section 800, section 7710 does not allow any exception to the rule that a plaintiff

7

must be a member of the corporation at time of the transaction complained of in order to institute or maintain a derivative suit.

In *Grosset*, our Supreme Court interpreted the "instituted or maintained" language of section 800, as well as basic legal principles and the section's statutory purpose, to mandate a *continuous stock ownership requirement* for a derivative plaintiff. (*Grosset, supra,* 42 Cal.4th at p. 1114.) Mutual benefit corporations do not have stockholders; they have members instead. (§§ 7310 et seq.)[8] Nevertheless, "extensive reference" to the decisional law interpreting section 800 assists in interpreting analogous portions of the mutual benefit corporation law. (Ballantine & Sterling, § 413.01 at p. 19-379.) Thus, the requirement that a plaintiff maintain his or her membership in a mutual benefit corporation in order to sue on its behalf is analogous to the requirement articulated in *Grosset* that a derivative plaintiff hold stock in the for-profit corporation on whose behalf he or she is suing. Because Haugen lost his membership in PBPA, for not paying rent, he could no longer maintain a derivative suit on PBPA's behalf.

Haugen's entire appeal rests on his assertions that his membership constitutes an interest in real property, because it and his lease are indivisible, or that his membership is security for a mortgage. He argues that PBPA could not take or convert or foreclose upon the membership without following the procedures outlined in various statutes for such purposes. This argument, however, ignores the subject of the trial court's ruling and consequently of this appeal.

The only issue in this appeal is whether Haugen's derivative suit was properly dismissed after he lost his membership. The effect of membership termination on his lease or on the security for his note or on any real property rights he may have is not at issue. For purposes of determining whether Haugen may "maintain" a derivative suit after losing his membership in a mutual benefit corporation, the membership is

---

[8] Section 5056 defines "member" as the term is used generally in connection with nonprofit corporations.

8

personal property equivalent to shares of stock. (See *Kucker v. Kucker* (2011) 192 Cal.App.4th 90, 95; Civ. Code, §§ 657, 658, 663.) How his membership may be regarded in other contexts and the procedures necessary to terminate it in those contexts are not before us here. We decide *only* that Haugen may not maintain a derivative action in PBPA's name after his association membership was terminated for nonpayment of rent.

Haugen alludes only once in his opening brief to the issue before this court – the dismissal of his derivative suit for lack of standing. He argues that *Grosset* did not apply to nonprofit corporations – without citing any supporting authority – and that the court denied his request to substitute another, presumably rent-paying, plaintiff in his place. We have already dealt with the standing issue in our discussion above. As to a substitute plaintiff, the record contains no indication that Haugen or anyone else ever moved to substitute another plaintiff, and counsel touched on the issue briefly only during oral argument on the motion in the trial court.[9]

In sum, Haugen has steadfastly refused to address the main issue in this appeal – his loss of standing. He has presented neither argument nor authority for overturning the dismissal of his derivative action on that basis.

---

[9] Haugen's reply brief argued at some length about a lack of proper notice of termination – an issue not raised in the court below. It was not properly raised as an issue on appeal either. California Rules of Court, rule 8.204(a)(1)(B) is quite clear that each point of legal argument is to be raised "under a separate heading or subheading" and accompanied by argument and authority. Otherwise it is forfeited. (See *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 725-726; *San Joaquin River Exchange Contractors Water Authority v. State Water Resources Control Bd.* (2010) 183 Cal.App.4th 1110, 1135.) Haugen discussed his quarrel with PBPA's notice only in his statement of "Background Facts."

We do not consider on appeal issues not raised in the trial court (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603) or raised for the first time in a reply brief. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.) In any event, if Haugen's membership was improperly terminated, section 7341 was available to him to remedy the situation.

Haugen's opening brief quoted at length from a transcript of a deposition of the president of PBPA's board. This deposition transcript was not part of the record below. Nearly a month after filing the opening brief, Haugen filed a motion to augment the record with the transcript, a motion that was denied. California Rules of Court, rule 8.204(a)(2)(C) limits the appellant's statement of the facts to matters in the record; it does not permit reference to facts the appellant hopes may become part of the record at some future time. The reply brief asserted that the trial court refused Haugen's request to lodge the deposition transcript at the hearing on the motion to dismiss. The record contains no such refusal, and trial court did not rule at all on the subject of the transcript.

**II.        Extra Filings**

We have been favored with an unusual number of documents from both sides in addition to their briefs. Haugen made three requests for judicial notice. Respondents moved to strike his reply brief and for sanctions. Respondents also moved to amend their supplemental brief. We deal with each in turn. [10]

Haugen first requested judicial notice of an order and a judgment on appeal from the Orange County Superior Court appellate division for a case involving PBPA and another tenant – an unlawful detainer action. He alludes to this order and judgment in his opening brief as collaterally estopping PBPA from terminating Haugen's lease without an unlawful detainer action. Because the termination of Haugen's lease is not an issue in this appeal, the order and judgment are irrelevant, and we deny the request.

Haugen's second request asks us to take judicial notice of tentative decisions in the lead case and in one of the subsidiary suits in the consolidated action, decisions issued while this appeal was pending. We can take judicial notice of the fact that the court issued a tentative decision in each case, but we cannot take notice of the truth of any statements made in them. (See *Day v. Sharp* (1975) 50 Cal.App.3d 904, 914.) They are not orders, findings of fact and conclusions of law, or judgments. (*Ibid.*) Since the issuance of tentative decisions in two other cases is irrelevant to this one, we deny the request for judicial notice. [11]

Finally, Haugen requests judicial notice of parts of the dockets for the consolidated action and for the derivative action, the parts that listed the parties and their counsel. He made this request in connection with his opposition to respondents' motion to strike his reply brief and their request for sanctions. His argument appears to be twofold. First, he argues that because the motion to dismiss his derivative action was

---

[10]    Haugen's two motions to augment the record have already been denied.

[11]    Haugen filed his second request for judicial notice on the same day he filed his reply brief. The reply brief relied heavily on statements made in the tentative decisions. A party cannot simply assume a request will be granted and use the materials as if they were part of the record.

filed in the consolidated action and ruled on in the same action, there is no final judgment, since the consolidated action was still ongoing when the court dismissed his suit. If that is so, then this appeal must be dismissed, because there is no appealable judgment or order.[12] (See *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697.) It is unusual, to say the least, for an appellant to insist that no appealable order underlies his request for review, especially after asserting in his opening brief that he was appealing from "the final judgment on an order dismissing the derivative case."

The trial court appears to have straightened out the muddle caused by filing documents pertaining to two cases under one case number, and we have no reason to address it here. Regardless of the case number under which it happened, Haugen's derivative action was dismissed, and judgment was entered in respondents' favor. As to him, the judgment is final and therefore appealable.

Haugen's second point seems to be that the appeal is defective because PBPA is not a party to it. As the corporation on whose behalf the action was brought, PBPA was an indispensible party in the trial court. (See *Grosset, supra,* 42 Cal.4th at p. 1108.) As a nominal defendant, however, it is not required to participate in the appeal. An appeal can go forward without the involvement of a respondent at all.[13] (See *Estate of Supeck* (1990) 225 Cal.App.3d 360, 365; *Miles v. Speidel* (1989) 211 Cal.App.3d 879, 881; Cal. Rules of Court, rule 8.220(a)(2).) The director defendants have taken the laboring oar in opposing Haugen's appeal, and no more is required. Haugen's third request for judicial notice is denied as irrelevant to any issue in this appeal.

Now for the respondents' extra filings. They have asked us to strike Haugen's reply brief because it cited primarily to documents that were not part of the record on appeal, namely the tentative decisions that were the subject of Haugen's second

---

[12] We note also that Haugen filed his notice of appeal in the consolidated action, not his derivative action.

[13] Thrivant, a defendant below, is also not participating in this appeal.

11

request for judicial notice. Respondents also objected to his raising issues for the first time in the reply brief, and they objected to his accusations of conflict of interest aimed at respondents' counsel. Respondents have separately moved for sanctions.

Unfortunately, Haugen is far from alone in bringing up new issues in a reply brief and in relying on "facts" that are not part of the record.[14] We deal with these transgressions of proper appellate practice by ignoring the new issues and the off-the-record facts. (See, e.g., *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 195; *Sourcecorp, Inc. v. Shill* (2012) 206 Cal.App.4th 1054, 1061-1062; *Berg v. Traylor* (2007) 148 Cal.App.4th 809, 812, fn. 2; *American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453.) In this case, because these flaws are so pervasive, most of Haugen's reply brief simply disappears from view as a piece of advocacy. To the extent it violated these principles, it has already been disregarded. There is no need for a special order, and the dismaying frequency with which we see such violations makes sanctions in this case inappropriate. The motion to strike and the request for sanctions are denied.

Respondents also moved to amend their supplemental brief to include omitted tables of contents and authorities. To this extent, the motion is granted.

---

[14] Haugen's excuse for this behavior is that the motion to dismiss was filed under the case number of the consolidated action, not the derivative action, so therefore we have to consider anything that happened in the consolidated action, even after judgment was entered in the derivative suit and the appeal commenced.

12

**DISPOSITION**

The judgment is affirmed. Appellant's requests for judicial notice are denied. Respondents' motions to strike and for sanctions are denied. Their request to amend their supplemental brief is granted. Respondents are to recover their costs on appeal.


BEDSWORTH, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.